**BROOKLYN ASH REMOVAL CO., Inc., v. UNITED STATES.***
No. 42439.

Court of Claims.
March 4, 1935.

*Writ of certiorari denied 55 S. Ct. 832, 79 L. Ed. —.

154

Frank L. Warfield, of Washington, D. C. (Herbert R. Grossman, of Washington, D. C., on the brief), for plaintiff.

Fred K. Dyar, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen., for defendant.

Before BOOTH, Chief Justice, LITTLETON, WHALEY, WILLIAMS, and GREEN, Judges.

LITTLETON, Judge.

Plaintiff was incorporated for the purpose, as stated in its certificate of incorporation, of carrying on a general contracting business in all its branches. During its entire corporate existence, it has been engaged exclusively in the reception, transportation, and final disposition of garbage, ashes, street sweepings, and rubbish in the borough of Brooklyn under successive contracts with the city of New York, the contract involved in this suit being a five-year contract which commenced April 1, 1928, and terminated March 31, 1933. The only income to plaintiff during 1929 and 1930 was received under and by reason of the above-mentioned contract. All of its contracts with the city of New York were the result of successful bids made by it.

Plaintiff filed federal tax returns for the years in question and reported thereon as gross income amounts which it had received under its contract with the city of New York. The tax computed upon the income shown on the return was paid to the collector at New York. Subsequently a claim for refund was filed on the ground that "the amounts received by the taxpayer under this contract are nontaxable since they are derived from the performance of an essentially governmental function under the Constitution of the United States of America, and under the decisions of the United States Supreme Court, particularly, Burnet v. Coronado Oil & Gas Co., 285 U. S. 393, 52 S. Ct. 443, 76 L. Ed. 815, decided April 11, 1932." The Treasury Department rejected the claim.

Plaintiff's contract with the city of New York provided that (1) plaintiff should re-

ceive, transport, and finally dispose of all the garbage, ashes, street sweepings, and rubbish collected by the carts and vehicles of the department of street cleaning in the borough of Brooklyn, which the city agreed to deliver to the contractor at the dumps to be furnished by the contractor, therein provided for; and (2) plaintiff should receive, transport, and make final disposition of all garbage, ashes, street sweepings, and rubbish delivered by carts and vehicles of city departments other than the department of street cleaning, and by carts and vehicles whose owners had received authority from the department of street cleaning to use the dumps.

The contract further provided that the contractor should pay to the city $48,000 per annum for the privilege of picking over and reclaiming from the materials delivered at the dumps or transfer stations such valuable articles as it might desire, and such sum was to be paid through a deduction by the city of $4,000 from each monthly payment to be made to the contractor under the contract. The city agreed to pay the contractor 58 cents a cubic yard for the reception and final disposition of garbage by incineration; 58 cents a cubic yard for reception, removal, and final disposition of rubbish, and a like sum per cubic yard for the reception and disposal of ashes and street sweepings.

█ This case presents a question which in its broad aspect has frequently been before the courts. The implied constitutional prohibition against taxation by the federal government of agencies or instrumentalities of a state or municipality is limited to protecting the states, their agencies and instrumentalities, in the performance of their strictly governmental functions against substantial interference through taxation by the federal government. A tax offends the prohibition only if it is imposed directly upon an essential governmental instrumentality, or, if not so imposed, its effect is to place a direct and substantial burden upon the exercise of an essential governmental function. Metcalf & Eddy v. Mitchell, 269 U. S. 514, 46 S. Ct. 172, 70 L. Ed. 384; Willcuts v. Bunn, 282 U. S. 216, 51 S. Ct. 125, 75 L. Ed. 304, 71 A. L. R. 1260, and Indian Motocycle Co. v. United States, 283 U. S. 570, 51 S. Ct. 601, 75 L. Ed. 1277; Wiltsie v. United States, 3 F. Supp. 743, 78 Ct. Cl. 293.

█ In our opinion the plaintiff, in its service to the city of New York in the final dis-

position of the material delivered to it by the city, was an independent contractor. The federal tax upon its income was properly returned and paid under the rule laid down by the court in Metcalf & Eddy v. Mitchell, supra, New York Trust Co. v. United States, 63 Ct. Cl. 100, and Mesce v. United States, 64 Ct. Cl. 481. For this reason we deem it unnecessary to discuss the question whether the disposition by plaintiff of refuse collected and delivered to it by the municipality was in the performance of an essential governmental function as that term has many times been defined in the decided cases; however, see Quill v. Mayor of City of New York, 36 App. Div. 476, 55 N. Y. S. 889, in which the Appellate Division of the Supreme Court held that the duty imposed on New York City of removing dirt accumulating in the streets and ashes and garbage from residences is a quasi private duty and no part of the exercise of the city's governmental functions. See, also, City of Denver v. Porter (C. C. A.) 126 F. 288.

All of the powers of supervision and partial control retained by the city of New York under the contract were such as are common in all contracts for services to municipalities. They were only such as were essential to ordinary operation in the execution and daily compliance by plaintiff with its contractual obligation. Plaintiff provided its own labor and machinery and most of its equipment in carrying out its contract. It was free to engage in any lawful contract and did, under its contract, engage in business for profit. It was not an employee of the municipality and the performance of the work which it did was not established by law but by its contract with the city of New York. Plaintiff's contract with the city was the result of public bids and under the facts and circumstances in this case it cannot, we think, be said that the effect of the tax on plaintiff's income placed a direct or substantial burden upon the functions of the municipal government. Assuming, without deciding, that the removal and disposition of garbage, ashes, etc., by a municipality is an essential governmental function, it is our opinion that in this case there was only a remote, if any, influence upon the exercise of such functions of government. Willcuts v. Bunn, supra; Marland v. United States, 53 F.(2d) 907, 3 F. Supp. 611, 78 Ct. Cl. 69; Wiltsie v. United States, supra. The petition must be dismissed. It is so ordered.