JOHN GUY BARROW and ALMA MAE BARROW, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Barrow v. Commissioner
Docket No. 29871-81
United States Tax Court
T.C. Memo 1983-123; 1983 Tax Ct. Memo LEXIS 663; 45 T.C.M. (CCH) 935; T.C.M. (RIA) 83123; March 9, 1983. John Guy Barrow, for the petitioners. Willie Fortenberry, for the respondent. SCOTT MEMORANDUM OPINION SCOTT, Judge: This case was called from the calendar at Jacksonville, Florida, on September 20, 1982, for hearing on respondent's motion to dismiss for failure to state a claim upon which relief could be granted filed March 8, 1982. When the case was called, *664 petitioner John Guy Barrow appeared and stated to the Court that there were facts not alleged in the petition that he could present which would show that there was a cause of action to be litigated in this case. The Court then agreed to accept a stipulation of facts by the parties and permit respondent to file a motion for summary judgment based on that stipulation and deem respondetn's motion to dismiss as moot. On September 22, 1982, the parties filed a stipulation of facts with exhibits attached thereto and respondent, based on that stipulation, filed a motion for summary judgment. The pleadings and the stipulated facts show that respondent determined a deficiency of $2,846.33 in petitioners' income tax for the calendar year 1979. The issue for decision is whether $12,164.63 of interest received by petitioners on tax sale certificates issued by counties and municipalities of the State of Florida is exempt from tax under section 103(a). [1]
Petitioners, husband and wife, who resided in Hillard Florida, at the time of the *665 filing of their petition in this case, filed a joint Federal income tax return for the calendar year 1979. During the years prior to 1979, John Guy Barrow (petitioner) would obtain, in accordance with the provisions of the Florida Code, documents entitled "Tax Sale Certificate." These documents would read-- TAX SALE CERTIFICATE STATE OF FLORIDA
OFFICE OF TAX COLLECTOR I,      , Tax Collector for the County of      , in the State of Florida, do hereby certify that I did, at public auction, pursuant to notice given by law as required, on this the     day of      , 19  , sell to the lands hereinafter described for the sum of     DOLLARS and     CENTS, said sum being the amount due for taxes, interest, costs and charges of the described lands for the year of our Lord, One Thousand Nine Hundred and      , that the above named purchaser of this certificate or assigns, will therefore be entitled to a deed of conveyance of such lands in accordance with the law unless the same shall be redeemed within such periods of time as are provided by law, by payment of such amount and interest thereon from the date of this certificate at the rate of eighteen *666 percent per annum, if purchased by the county or twelve percent per annum (or at such lower rate of interest as may be bid by any purchaser other than the county). Said lands are described as follows: to wit: [Description] The interest rate bid at the sale under Chapter 197, Florida Statutes, was     percent. in the County of      , State of Florida. WITNESS my hand at      , Florida, this     day of      , 19  . Signature:      , Tax Collector During 1979, petitioner received $12,164.63 interest on "Tax Certificates" which he had obtained, which were as above set forth with the blanks appropriately filled. It is petitioner's position that even though the tax sale certificates which he obtained from various counties of the State of Florida recite that the lands described in the certificates are sold to him for the sum of the taxes due thereon plus interest, cost and other charges, and that he will be entitled to a conveyance of such land, unless within the time provided by law the same shall have been redeemed, in fact what he had done was to lend money to the State of Florida or a county or municipality thereof, secured by land on *667 which taxes had been assessed and not paid. Petitioner contends that for this reason the interest he received was on the obligation of a State, territory or possession of the United States or a political subdivision thereof and therefore exempt from tax under section 103. It is respondent's position that petitioner had not lent money to the State of Florida or any political subdivision thereof within the meaning of section 103, but rather that petitioner had purchased a right to the lien for taxes that the state, county or municipality had, and a right to receive those lands under a tax deed unless the owner who had defaulted in the tax payment with respect to the land exercised his right of redemption and paid off the past due taxes together with cost, penalties and interest, and interest from the date that the tax sale certificates had been issued to petitioner until the date of payment. It is respondent's position that the interest was effectively received by petitioner from the delinquent taxpayers against whom the tax was assessed and not as interest on an obligation of a State or political subdivision thereof. Fla. Stat. Ann. sec. 192.011 (West *668 Supp. 1981) provides that the county tax assessor shall assess all property located within his county, and Fla. Stat. Ann. sec. 192.053 (West Supp. 1981) provides that a lien for all taxes, penalties and interest shall attach to any property as of the date of assessment and shall continue in full force and effect until discharged by payment as provided in Chapter 197. Fla. Stat. Ann. sec. 192.042 (West Supp. 1981) provides that real property shall be assessed according to its just value on January 1 of each year. Section 197.012 of the Florida statutes provides that all taxes shall be due and payable on November 1 of each year and that if not previously paid such taxes shall become delinquent on April 1 following the year in which they are assessed. Section 197.062 of the Florida statutes provides for advertisement of real property with delinquent taxes for a period of 4 weeks on or before June 1 of each year. Section 197.116 of the Florida statutes provides that on the day and at the approximate time designated in the notice of the sale, the tax collector shall commence the sale of tax certificates on those lands on which taxes *669 have not been paid and shall continue the sale from day-to-day until each parcel is sold to pay the taxes, interest, costs and charges thereon, and in case there are no bidders each parcel shall be bid off by the tax collector for the county. The tax collector shall offer all the land as assessed. This section further requires that the tax collector make a list of all the certificates sold for taxes, showing the date of the sale, the number of each certificate, the name of the owner as returned, a description of the land within the certificate, the name of the purchaser, the interest rate bid, and the amount for which sale was made. This statute also provides that the land shall be struck off to the person who will pay the tax, interest, costs and charges, and will demand the lowest rate of interest, not in excess of 18 percent per year. Section 197.141 provides that all tax sale certificates issued, whether to the county, a municipality or an individual, shall be transferable by endorsement at any time before they are redeemed or a tax deed is executed thereunder. Section 197.156 of the Florida Statutes Annotated provides that any person owning or claiming land upon which a tax *670 sale certificate has been sold may redeem the land at any time after the issuance of the tax sale certificate and before a tax deed is issued by paying to the tax collector in the county where the land is situated the face amount of the certificate of sale and that upon redemption being made, the person redeeming the tax sale certificate shall pay all taxes, interests, costs, charges and omitted taxes, if any, as provided by law, and in addition payment shall be made for costs incurred and the interest earned on the tax sale certificate. This section further provides that when any land subject to a tax sale certificate has been redeemed, the collector shall pay to the holder of the certificate the amount received by him for redemption, less service charges. The certificate shall be surrendered to the tax collector and canceled if the whole is redeemed. Section 197.241 of the Florida Statutes provides that tax deed on real estate may be obtained by the holder of a tax sale certificate at any time after 2 years have elapsed since April 1 of the year of the issuance of the tax sale certificate and before the expiration of 7 years from the date of issuance. This section provides in detail *671 for the advertising of the lands for sale, the bidding, etc. From the analysis of the Florida statutes set forth above, it is apparent that when an individual acquires a tax sale certificate from a county tax collector, there is no obligation arising out of the county's exercise of its borrowing power. Furthermore, there is no obligation on the part of the county to repay to the individual any portion of the funds he transfers to the tax collector to acquire the certificate. The only right that the certificate holder has is to receive from the tax collector any funds paid by the owner of the land with respect to which the certificate is issued to redeem his land in whole or in part or, upon proper application 2 years after acquisition of the certificate but less than 7 years thereafter, to go through the procedures necessary to enable the holder of the tax sale certificate to either acquire a tax deed to the property or receive reimbursement of the funds he expended to acquire the certificate plus the interest bid thereon from funds paid by another to bid in the property and receive a tax deed. Neither of these requirements give rise to a debtor-creditor relationship between the *672 county and the tax sale certificate holder. There is no direct, immediate and unconditional obligation on the part of the county to repay the amount paid for the certificate or any interest thereon. Petitioner and respondent in their memoranda have made reference to various Florida cases dealing with tax sale certificates and tax deeds. In our view, none of the cases to which our attention was directed bear directly on the issue here involved. A number of Florida cases do state that the purpose of the law dealing with the issuance of tax sale certificates is to get the money past due and delinquent for the lawfully assessed State and county taxes out of the property against which the assessment was made and to put it into State or county funds for the benefit of the State or county. Beebe v. State Supreme Court of Florida,151 So. 298, 299 (1933). Likewise, cases point out that "tax certificates are only a means of evidencing unpaid taxes and to enable the sale thereof for the purpose of realizing funds for current government expenditures. The tax certificate does not change the basic nature of the indebtedness." Smith v. City of Arcadia,185 So.2d 762, 767 (Fla. Dist. Ct. App. 1966). *673 It is clear, however, from these cases, as well as from other cases, that the obtaining of money through the sale of tax sale certificates does not create an indebtedness on the part of the State of Florida or a county or municipality thereof to the purchaser of the tax sale certificate. As was pointed out in Smith v. City of Arcadia,supra, the tax sale certificate does not change the basic nature of the indebtedness. There is an indebtedness to the State, county or municipality for taxes which are unpaid by the landowner. The tax sale certificate in substance represents a sale by the State of this indebtedness to a private individual when the tax sale certificate is purchased by such individual. The tax collector, at most, might be called on to act in the capacity of a collection agent for the certificate holder, by taking funds from a landowner who wishes to clear the title to his land by paying the taxes, penalties and interest, together with the interest due to the holder of the tax sale certificate, and transferring those funds to the holder of the tax sale certificate. However, this does not create any obligation on the State or any subdivision thereof, *674 stemming from the exercise of its borrowing power, to pay funds to a holder of a tax sale certificate. [2] Likewise, there is, in some ways, a transfer of the lien the State holds on the land to the holder of the tax sale certificate in that after a period of 2 years from April 1 of the year in which the certificate was acquired, the holder of the tax sale certificate can seek to obtain a tax deed. This right is somewhat in the nature of foreclosing a lien. Again, however, this security for the tax sale certificate does not place any obligation on the State or any political subdivision thereof to pay an amount to the holder of the tax sale certificate. *675 The only decided case to which our attention has been drawn, or which we found, dealing with whether interest collected by holders of tax sale certificates purchased at a State or county sale of such certificates is exempt from tax is Wiltsie v. United States,3 F.Supp. 743 (Ct. Cl. 1933). The basic issue in that case was whether the imposition of a tax by the Federal government on the income received by a taxpayer as a purchaser of delinquent real estate tax certificates sold by municipalities of Michigan, New York and North Carolina at annual tax sales is unconstitutional because the seller of such certificates is an instrumentality of the State. The laws with respect to sale of tax certificates of Michigan, New York and North Carolina discussed in Wiltse v. United States,supra, were not substantively different from the laws of Florida involved in the instant case. Furthermore, in the Wiltse case the actual evidence introduced showed that when the various municipalities held the sale of tax certificates they were in actual need of funds, and had it not been for the sales of the tax certificates might have defaulted on payments of bonds. *676 In that case the Court concluded that there was no violation of the Constitution in subjecting the interest received by the purchasers of the tax certificates to Federal income tax, stating (at 752): The purchaser of the delinquent tax, with the view of thereafter deriving a gain from the collection of such tax and interest thereon secured by a first lien upon real estate, is, we think, in no different position as concerns the municipality than a purchaser of any other character of property from a municipality. * * * The Court then pointed out that it had long been held that a gain derived through dealing in property or an interest therein acquired from a State did not fall within any implied constitutional prohibition against taxation. In the instant case, we conclude that the interest received by petitioner with respect to a tax sale certificate he acquired from various counties and municipalities of the State of Florida is not exempt from tax as interest on an obligation of such county or municipality. Clearly here, the tax sale certificates are issued to transfer the tax obligation owed to the State, county or municipality by the landowner to the individual purchaser of *677 the certificate. The exemption provided by section 103 is limited to interest paid by governmental entities on obligations issued under the borrowing power of the governmental entity. Drew v. United States,551 F.2d 85 (5th Cir. 1977); American National Bank of Austin v. United States,421 F.2d 442 (5th Cir. 1970); King v. Commissioner,77 T.C. 1113 (1981); Newlin Machinery Corporation v. Commissioner,28 T.C. 837, 841-842 (1957). These cases point out that the word "obligation" as used in section 103 does not include interest upon indebtedness not incurred under the borrowing power of the State. In the instant case, not only is there no use of the borrowing power of the State of Florida or any of its counties or municipalities in the issuance of the tax sale certificates, there is no indebtedness created from the State or a political subdivision thereof to the purchaser of the tax sale certificate and no obligation on the part of the State or a political subdivision thereof to repay any amount in connection with the certificates. We conclude that the interest received by petitioner in connection with the tax *678 sale certificates which he purchased from political subdivisions of the State of Florida is not exempt from tax under section 103. While the parties disagree on the construction to be given to the facts in this case, there is no disagreement as to any material fact. In fact, the facts necessary to our decision in this case have been stipulated. Therefore, respondent's motion for summary judgment will be granted. An appropriate order and decision will be entered.
Footnotes
1. Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year here in issue.↩
2. Petitioner seems to attach controlling significance to his profession that at the various times he acquired tax sale certificates he had intended to make loans of the funds he transferred to the State of Florida or a county or municipality thereof. Petitioner further flatly denies that he was seeking to enter into an agreement for the conditional future purchase by him of the lands described in the certificates. However, for a transaction to be considered a loan, both parties to the transaction at the time the funds were furnished must have reached an actual agreement to establish a debtor-creditor relationship. Petitioner does not contend that there was any such intention on the part of the State or counties. In fact, in his pleadings and briefs he repeatedly terms the actions of the various county tax collectors in advertising and labeling the transaction as a sale to be a fraud. At any rate, our examination of the Florida law makes it abundantly clear that no borrowing is contemplated under the Florida statutes.↩